UNITED STATES of America

v.

Curtis Lee JORDAN.

Crim. A. No. CR691–009.

United States District Court,
S.D. Georgia,
Statesboro Division.

Jan. 12, 1993.

Kathryn M. Aldridge, Asst. U.S. Atty., Savannah, GA, for plaintiff.

William F. Hammond, Augusta, GA, for defendant.

## ORDER ON APPLICATION FOR COMPENSATION FOR APPOINTED COUNSEL

BOWEN, District Judge.

An Indictment was returned against Curtis Lee Jordan, Defendant in the above-captioned matter.[1] Soon after the indictment, Augusta attorney William F. Hammond was appointed pursuant to the provisions of the Criminal Justice Act of 1964 (CJA), Pub.L. No. 88–455, 78 Stat. 552 (codified as amended at 18 U.S.C. § 3006A), to represent Mr. Jordan. Thereafter, largely as a result of the efforts of appointed counsel, the charges against Mr. Jordan were dismissed. According to Mr. Hammond, appointed counsel's principal area of law practice is the field of taxation. Nonetheless, Mr. Hammond acquitted himself quite well—and his client to boot.

Mr. Hammond filed an application for compensation under the CJA and attached a memorandum wherein, figuratively, he comes out swinging. Appointed counsel focuses his verbal aggression in three areas: First, he assumes that the Court will adopt a "miserly" approach to CJA applications and will not award a fee in excess of the $3500 limit for cases which are not complex and extended;[2] second, Mr. Hammond makes thinly veiled allusions to misconduct on the part of prosecutors and investigators; and third, appointed counsel is openly scornful of the district policy which requires all practicing members of its bar to serve in CJA appointments.[3]

As to the first area of focus, the Court does not employ a miserly approach to CJA applications. To the extent that funds are available, it is the view of this presiding judge that applications should be considered liberally with a view toward the award of a fair fee subject to the requirements of the law. The problem is not with a miserly approach but with the fact that the law states that a certification by a district court for payment in excess of the statutory maximum can be made to the chief judge of the circuit only when the case is genuinely complex and extended. 18 U.S.C. § 3006A(d)(3). Frequently, I cannot so find and must accordingly disallow any fee in excess of $3500. The law cannot be ignored on the basis of an attorney's area of specialization, prominence within the bar, membership in a particular firm, success on the merits of the case, or other such criteria. Only those cases which I can sincerely label extended and complex can be so certified.

Counsel's anticipatory umbrage on this score is misplaced. Because of the peculiar facts of the case as otherwise related in Mr. Hammond's memorandum and the response filed by the United States Attorney, I do view this as a matter which was certainly extended and complex enough to warrant the threshold certification. Accordingly, without hesitation or equivocation, I certify to the Chief Judge of the Eleventh Circuit Court of Appeals that the facts of this case were extended and com-

---

**1.** Defendant Jordan is not a stranger to litigation in the Southern District of Georgia. *See Jordan v. Linahan*, No. CV392–023 (S.D.Ga.) (habeas corpus action); *United States v. One Parcel of Real Property Known as Rt. 2, Soperton, Treutlen County, Georgia*, No. CV390–041 (S.D.Ga.) (civil forfeiture in rem); *Jordan v. Hooks*, No. CV389–014 (S.D.Ga.) (civil rights action); *State v. Jordan*, No. CR392–002 (S.D.Ga.) (petition for removal of criminal action from state court).

**2.** *See* 18 U.S.C. § 3006A(d).

**3.** While I will comment upon the district policy and its merits, any further comment upon counsel's assertion that $60.00 per hour would not send his daughter to Johns Hopkins would be no less ill-considered than the remark itself.

plex to the extent that compensation in excess of $3500 may be awarded.

Next to receive the acerbic prose of appointed counsel were the United States Attorney, the Georgia Bureau of Investigation, and the Federal Bureau of Investigation. The Court is not possessed of the prosecutorial prerogative; such remains within the discretion of the President's appointee for such purposes, the United States Attorney. However, because of the loosely worded and adversarially phrased comments about the prosecution, I felt it necessary to receive the comments of the United States Attorney before ruling upon this application.[4]

Having reviewed the response of Chief Assistant United States Attorney Edmund A. Booth, Jr., who investigated the matter at my direction, I am content that there is no actionable misconduct on the part of any prosecutor. To the extent that there was any misconduct on the part of the GBI agents who gummed up the case by confusing the affidavits, either deliberately or inadvertently, such will be left to the investigation of the United States Attorney and the supervisory authorities to which they are subject. I cannot conclude upon this record that a deliberate misstatement was made before the Court by any agent. I am confident that the United States Attorney and the agency involved will bring that to the attention of the proper authority. Nevertheless, the skill of counsel in doggedly investigating and disclosing the inconsistency which resulted in the dismissal of charges against Defendant Jordan cannot be denied. Tax attorney or not, Mr. Hammond did a fine job for Defendant Jordan, and he had to spend a lot of time in the matter. While there may be some concern about the amount of the bill for the paralegal services, I would rather see this time billed as such than as attorney's time, in keeping with the economy objectives of the CJA.

My final comment with respect to this area of Mr. Hammond's complaint is similar to his own conclusion: The system worked, a potential injustice was thwarted, and a determined lawyer (albeit a tax man) kept the agents and the prosecutor honest by making them toe the line. I really do not understand Mr. Hammond's complaint in this regard. Surely his accomplishment in this case is more gratifying professionally than looking up loopholes for rich people. Mr. Hammond has had the enviable opportunity of standing between the cutting edge of the establishment's legal machine and the great unwashed. He was the victor, and now he is grousing about it.

Not many indigent people have tax problems. Mr. Hammond has been delivered of a substantial impediment to the maturation of his legal career—that is, a lack of opportunity to occasionally serve the poor. I am gratified to know that the district policy of universal CJA participation has expanded Mr. Hammond's horizons.

Finally, I will address the district policy regarding indigent representation. That policy is embodied in section IV, Rule 11 of the Local Rules of the Southern District of Georgia and is quoted without embellishment as follows:

> The historic and present obligation of the bar to provide legal counsel and representation to those who cannot afford to pay is recognized and established as the policy of this Court. In years past, before the organization and funding of legal services corporations and the enactment of legislation providing payment for services in appointive criminal cases, many lawyers fairly and dutifully responded to the call for indigent representation. Increasingly, it is perceived that lawyers who regularly and frequently practice in this Court have no contact whatsoever with the indigent client in civil or criminal cases. This Court will not participate in or permit an abdication of the lawyer's fundamental responsibili-

---

**4.** The ruling is, admittedly, long overdue. The United States Attorney responded promptly, but the application itself was submerged in a sea of paper during the move of the District Court facilities in Augusta, and the original surfaced only three weeks ago. Having earlier obtained a copy of the original from Attorney Hammond, I have simply been struggling with the decision for some time, not without an occasional bout of procrastination.

ty to provide legal services to indigents. It is observed that such services are more effective and produce greater professional fulfillment when provided voluntarily rather than compulsorily. All members of the bar of this Court who possess the mental and physical ability, regardless of age, are expected to provide legal services, on occasion, to indigents.

*Id.* I personally wrote this paragraph of the local rules after discussing the policy in lengthy meetings with the district judges. The policy has been discussed and disputed, but it remains unaltered. There is no magic to the practice of criminal law, and anyone who can try a decent civil case can try a criminal case. Mr. Hammond is an intelligent, extremely well-educated lawyer who is a partner in a large and respected firm, and he moves in all of the right circles. Such does not provide an exemption from CJA appointments. If Mr. Hammond is to be exempt, who will take the cases that would otherwise be assigned to him? If Mr. Hammond is to be exempt, how can we require similar services of lawyers from other cities who regularly practice in the divisions of this Court?

■ The district policy is not dependent upon compensation. The duty of a lawyer to represent indigents does not entitle him to compensation. It is the price we pay to be a member of a noble profession. The opportunity to participate in the representation of the poor is a gift, just as is one's privilege to have paying clients. What gives Mr. Hammond the right to be paid for every hour of his time? As a professional, our first duty is to the profession and to its needs; not to ourselves, and not to our families. Whether or not CJA funds are available and whatever the rate of compensation prescribed by statute or otherwise, the members of the bar of the Southern District of Georgia will contribute their fair share of time in the representation of indigent clients. Further commentary would only be redundant of these principles.

■ As to the amount of compensation, upon review of the voucher and the Government's response thereto, and having certified to the Chief Judge of this Circuit that the case was sufficiently extended and complex to warrant an excess payment, it is my view that the application should be approved in the amount of:

| | | |
|---|---|---|
| Total in Court Comp. | – | $ 30.00 |
| Total Out of Court Comp. | – | $ 7,500.00 |
| Total Travel Exp. | –· | $ 54.00 |
| Total Other Exp. | – | $ 4,512.55 |
| Grand Total | – | $12,096.55 |

Accordingly, IT IS HEREBY ORDERED AND CERTIFIED that the Clerk of this Court shall transmit to the Chief Judge of this Circuit the aforementioned application for compensation, the response of the United States Attorney, and this Certificate for consideration by the Chief Judge of the Circuit.